### In re BOESSNECK et al.

### In re HAYNES.

(Circuit Court of Appeals, Second Circuit. April 18, 1916.)

### No. 177.

BANKRUPTCY ⊙═140(3)—OWNERSHIP OF PROPERTY—TRUST.
    Petitioner, an importer, desiring to obtain assistance for the carrying on of his business, applied to the bankrupts, a copartnership, and they agreed that orders by petitioner for goods should be submitted to the bankrupts; that, on approval, the bankrupts should remit to the for-

eign manufacturers the net amount of the consular invoices and should pay the duties on the goods; that they should be delivered to petitioner, who might sell them with the approval of the bankrupts, but that the bills should show an assignment to the bankrupts; that the bankrupts should guarantee the solvency of the customers; that the moneys collected should be received by the bankrupts; and that they should account semiannually. Under this arrangement, the bankrupts were allowed to deposit money so received with their general funds. *Held*, that no trust in such funds was created, and therefore, on bankruptcy, petitioner was entitled to no lien on funds derived from such transaction for which an accounting had not been had.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. ☞140(3).]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Otto Boessneck, Hugo E. Boessneck, Kurt Loewel, and Herman Weedgartner, copartners trading as Boessneck, Broesel & Co. From an order denying the petition of Charles W. Haynes to establish a lien on moneys in the hands of the receiver of the bankrupt, petitioner appeals. Affirmed.

Hiram Thomas, of New York City, for petitioner.

Rosenberg, Levis & Ball, of New York City (James N. Rosenberg and Ernest A. Bigelow, both of New York City, of counsel), for trustee.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The appellant filed a petition in the court below praying that he be adjudged to have a lien on the moneys in the hands of the receiver of the bankrupt in the sum of $16,810.12 and that the receiver be directed to pay over to him that amount. On the coming in of the answer the issues raised were referred to a special master to take the testimony and report. He reported that in his opinion the petitioner had failed to establish that any trust fund was held by the receiver, now the trustee, for the petitioner. The District Judge confirmed the master's report.

The question is whether the appellant is entitled to be paid in full out of the funds in the hands of the trustee in bankruptcy, on the ground that a fiduciary relation existed between the appellant and the bankrupt, so that the funds in the trustee's hands are impressed with a trust in appellant's favor, or whether no trust existed and appellant is to share with the general creditors pari passu in the final distribution of the bankrupt's estate.

The bankrupt was a copartnership engaged in the business of the importation and sale of woolens and laces. The appellant was a dealer in laces, who purchased practically all of his product in Europe. In 1911 he desired to obtain financial assistance for the carrying on of his business. In order that he might obtain the necessary credit from the European manufacturers of his grade of merchandise, he had several conversations with a representative of the bankrupt with a view to having that firm finance his business. The results of these conversations are set forth in two letters, one sent by the bankrupt to appellant, the second sent by appellant to the bankrupt.

The general arrangement made between the parties was as follows: The appellant was to maintain his own office and selling force, and as soon as orders were taken by his salesmen, the orders were to be submitted to the bankrupt for approval. If approved, the order was to be forwarded to the foreign manufacturers, and the bankrupt agreed to remit to the foreign manufacturers the net amount of the consular invoices upon receipt of the merchandise in New York, thus becoming liable for the amount owing on the imported goods. The foreign manufacturer was to invoice the goods to appellant, but the bills of lading were to be made out in the name of the bankrupt, and the consular invoices and duplicates thereof, together with the bills of lading, were to be sent to the latter. The bankrupt was to make the entry of the merchandise in its own name and pay the duty, charging the amount of the duty so paid and all expenses incident to the handling and forwarding of the goods to appellant's account. The goods were then delivered into appellant's possession and forwarded by him to his customers, the bills being sent in appellant's name and on his bill heads, but bearing a notation upon each bill that the customer's account was assigned to the bankrupt and that payment should be made to it.

The bankrupt guaranteed to appellant the solvency of the customer, of the accounts which it approved, and, in case of a failure of the customer, the account of appellant was to be credited with the amount owing by the customer. The money received by the bankrupt from the customer was deposited in its general bank account and used as its own, and an account was rendered to appellant monthly and semi-annually of the net balance standing to his credit. The right to deposit the proceeds received in the general bank account is not disputed by appellant; on the contrary, it is alleged in the petition as proper.

For their services in guaranteeing the accounts and importing the goods the bankrupt was to receive 2 per cent. on the net amount of the sales and was entitled to charge 6 per cent. interest on the amount advanced for the account of appellant. The appellant was to keep on deposit at all times with the bankrupt $7\frac{1}{2}$ per cent. of the sales accounts outstanding; the bankrupt reserved the right to deduct from his deposit account all claims, allowances, returned merchandise, charges, or other discounts from any of the sales accounts that were assigned. In case the bankrupt declined to assume the credit risk of any customer, appellant was to have the right to ship to this customer, but the outstanding account so created, when assigned to the bankrupt, was to be held by it for collection only.

We are unable to see in all this that any trust relation existed between these parties. The relation was that of debtor and creditor. The bankrupt had the right to deposit the proceeds of accounts collected in its general bank account and could use the money as it saw fit. This is not consistent with the existence of a trust, as a trustee has no right to mingle trust funds with his own, and he has no right to make use of the money for his own purposes, and he is not chargeable with interest unless he allows trust money to lie too long uninvested, or makes some unauthorized use of it. The relation was not even that of principal and agent, for title to the money which the

agent collects is not in the agent, but is in the principal, and the agent has no right to mingle it with his own, or to make any use of it. He must hold it alone for his principal. The bankrupt took the title to the funds collected, not for the benefit of the appellant, but for its own benefit and protection.

Inasmuch as in our opinion no trust existed between appellant and the bankrupt, it is quite immaterial that the trustee in bankruptcy admits that $4,500 came into his hands from collections received from Haynes' sales which were deposited in the Pacific Bank, and an additional sum of $3,524.05 from collections from like sales. deposited in the Importers' & Traders' Bank. To that extent appellant would be entitled to recover, if his theory of a trust relation could be established. As to the balance of the amount he claims, his proof fails to trace it into the hands of the trustee. But as there is no trust relationship shown, he has no lien which he can assert in preference to the general creditors, even as to the funds shown to have reached the trustee's hands.

Judgment is affirmed.